Good morning. Tim Stackhouse on behalf of Appellant Richard Kile. The issue on this appeal, it's a breach of contract and bad faith case. The alleged breach of bad faith arises out of USAA's failure to properly evaluate the UIM claim and to make a reasonable offer. So the question on appeal is, how do you measure those damages? Well, I think the first question on appeal is, is the case properly before this Court? And we did ask for supplemental briefs. And let me just ask, was the dismissal here really with prejudice? Well, if the case goes back to the district court, the claim would be required. That's a yes-no question. Was the dismissal here really with prejudice? No, I did not believe it. It was not. I did not believe it. So why isn't this case exactly like Chang and Dannenberg? Well, there's really nothing left to try in the district court. It's a factual dispute regarding the amount of damages. I thought there was a lost wages claim, and that was the claim that – Yes, lost future wages, correct. Right. That needed to be tried that the district court was prepared to go forward and go to, I guess, trial or further litigation on. That is correct. But finality, the question of finality, it needs to take into consideration the purpose, the piecemeal appeal risk, efficient use of judicial risk. Well, here we are on piecemeal appeal. I mean, we've got one appeal, and if you win, you're going to go back and have potentially a trial and maybe another appeal. Isn't that exactly why cases like Dannenberg and Chang says you can't do that? Well, if we go back and have another trial or have a trial. I understand the practical reason why both parties would like us to resolve this case now. It just seems to me that we don't have jurisdiction to resolve this case now, and our case law makes that pretty plain. I believe this case is more in line with James P. Price Stern, where those were contract claims that were dismissed without prejudice. Well, in James, the court noted that there was no revival of a claim, so just the opposite of what we have here, and that where there was no agreement to revive a claim on remand, there was less opportunity for manipulation. Well, the claims were dismissed without prejudice, so it would still be possible to revive them on remand. Right. But the court, in that case, we noted that the statute of limitations might run and there might be other issues as opposed to revival, so we clearly made that distinction in James. Yes, in this case, as in James here, we also were open up front with the district court. The stipulation clearly stated that we were dismissing the remaining portion of the claim in order to appeal immediately, and that portion of the claim was only there before the court because the court granted a 56-D relief suit sponteo, which wasn't asked for. And if the claim were to remain in district court and have a trial, it's possible an evidentiary issue could come up that would be on appeal, but regardless of the result, this appeal would be back here. And if successful, it would go back to the district court, where again there would be a second trial and there could again be issues raised for appeal. And so keeping that one minor claim alive in the district court, it doesn't promote the policy of efficient use of judicial resources and avoidance of piecemeal appeals. And as stated in our letter brief, if necessary for this jurisdiction, we will agree to make the dismissal with prejudice and not revive it if the case goes back down to the district court. I noted that, and that might make a difference. I confess because of the timing, I have not had an opportunity to pursue whether that has been recognized by any court as permitting a court of appeal to assert jurisdiction over the appeal. I don't know. Have you had a chance to look to see whether that's worked anyplace else? Not that exact scenario, but the case law does say that events that happen subsequent to entering of a judgment can convert a non-final judgment to a final judgment. What concerns me, though, is that you haven't done that. So you could have gone back to district court, I suppose, and asked the district court to change or to negate the stipulation, but you haven't, so it's still pending. And so all we're hearing from you and we heard in your brief was, if absolutely necessary, I'm willing to do that sometime in the future. So I'm a little concerned about whether that's sufficient to give us jurisdiction. Well, the case was to remain in district court by stipulation, so if the parties agree and stipulate that it should not remain, then that would have the same effect as a. . . But at this point, we just have a statement in your brief. We don't have a stipulation. That is correct. Should we defer this case, waiting to see if there's going to be such a stipulation? I mean, the point is . . . You'd like for us to opine on the issue first, but we don't have jurisdiction to opine on anything if we don't have jurisdiction. So we're kind of in a catch-22 here, and I appreciate your offer. I appreciate the predicament both of you have. This case doesn't justify going back and forth between the courts, but we only have the jurisdiction we have. And so we hear the possibility of maybe something will happen in the future that would fix this problem, but that's not probably enough for us to go to the bank with. So here we are. Well, again, I would point out that the question of finality, to quote the Supreme Court, it requires some evaluation of the competing considerations underlying all questions of finality, the inconvenience and cost of piecemeal review on the one hand, and the danger . . . This case plainly isn't final. I mean, you've got a summary judgment, a partial summary judgment, and you've got the claims sort of shoved to the side with the label of with prejudice that wasn't with prejudice. So under our case law, it seems to me there's no question that we don't have jurisdiction over the case as it stands now. Now, you've offered to fix that, and I appreciate that, and that fix might work, but that fix isn't in place yet. So chicken and the egg. You'd like us to speak first, but we can't speak if we don't have jurisdiction. So we may have to point back to the egg and say, if you guys want to do something that gives us jurisdiction, Godspeed. But until then, I don't think we can say anything. I would just also like to point out that there's really, there are two claims here. There's breach of contract and bad faith. And the motion for partial summary judgment, it applies to both of them. It's not really a claim that remains. It's an element of damages that remains down below. So it's going to be entwined with the pain and suffering damages that were to be the issue on this appeal. That wasn't my understanding at all.  Well, loss in earning potential is a claim that survived. Right. And that's the problem with our jurisdiction is the earning potential claim. So it's not intertwined with the pain and suffering. Well, it's all the damages owed under the UIM contract. I mean, there's the claim for the breach of contract. Right. But the issue that's, if we can reach it on appeal right now, is pain and suffering. So it won't resolve the lost wages or earning potential claim. No, that's correct. But it's entwined. There's different elements of damages, all part of the same claim. The dismissal is just for the pain and suffering damages. That was based on a legal issue that isn't applicable to the lost wages claims. It was based on the legal issue as to whether Arizona law allowed or contemplated that the decedent could still recover it from the insurance company. Correct. And that is not related to the lost wages claim. The legal question, no, it's not related. But the factual issues and the, like, for instance, the bad faith. The bad faith allegation is that they didn't properly evaluate the claim. And proper evaluation had to take into consideration both of those claims, both the pain and suffering and the lost wages claim. So in that regard, they are entwined. And considering them together would make more sense than, you know, to have a trial on just the lost earning capacity. And then there are also these pain and suffering damage that you, the jury, don't get to consider when awarding damages. But you have to consider them here in bad faith claim and whether or not USAA improperly evaluated the claim. Have you attempted to mediate this case? We did, yes, through the Ninth Circuit mediation program. And we were unsuccessful. I would like to reserve the rest of my time for rebuttal. All right. May it please the Court, Your Honor, my name is Nate Meyer. I represent USAA Casualty Insurance Company. As we all know by now, this is a breach of contract. In a bad faith case arising from a UIM claim the decedent, Edward Kyle, made to defendant USAA after an October 28, 2012 accident. To address jurisdiction first, Your Honors, I understand after, you know, looking at the cases in the order how, you know, and although the parties did dismiss the case with prejudice, the parties agreed to reinstate the sole remaining claim, which is for loss of earning capacity between the date of the accident and the decedent's death, that the court could conclude that it may lack jurisdiction in the situation. That said, I think that, you know, the estate has offered to go ahead and dismiss the sole remaining claim of loss of earning capacity. And I understood that that was an affirmative offer in the letter brief. So you are willing right now to dismiss the loss of earning capacity? That's correct. All right. And so I think we have an agreement. But what I understand, Your Honors, to be saying is that we may have to go back to the district court and put that agreement on the record there, rather than simply putting it on the record in front of Your Honors today to dismiss that sole loss of earning capacity claim. To reiterate Judge Clifton's question, are you aware of any case law where that procedure was used and the court determined it then had jurisdiction? I'm not aware of any specific case, Your Honor. But I do know that this circuit, the Ninth Circuit in Dannenberg, said that, you know, it will take a pragmatic approach to finding jurisdiction in finality situations where something happens after a non-final order that renders it final. And here, you know, both the estate and USA are willing to dismiss that loss of earning capacity claim so we can have this issue teed up right now. Confessed that civil procedure was not my favorite class in law school, so I feel your pain. Let me be very clear about this, because I look at the letter brief filed on behalf of plaintiff and it prefaces the offer by saying, if necessary to preserve this appeal, so on and so forth. And that's why I suggest it seems to me this solicits a decision from us on the jurisdictional question that says, okay, yeah, you got a problem, in which case plaintiff offers to do something. And I don't think we can offer that advisory opinion as to jurisdiction. So let me put it to both of you. Is this an unqualified agreement between the parties that the what I'll call the so-called with prejudice dismissed claims are actually dismissed with prejudice, not conditioned on us saying that otherwise you got a jurisdiction problem? And it's easy for you to say yes, so the focus really turns to plaintiff. Because I don't think we can give you the answer to the question you've posed in your letter brief. If the court can't reach a decision today and it's going to have to go down to the district court, then back to the district court, my preference would be simply to move for a 54B certification and appeal through other channels rather than dismissing that portion of the claim outright. But if the appeal can go forward today and be heard today, then we would agree to dismiss that portion of the damages claim. Well, I guess we'll have to figure out if that works. Can I ask you a question about the merits? It seems like I'm not sure we're going to reach the merits, but in case we do, I have a question about them. Please, Your Honor. I think you said in your brief that we don't need to worry about the incentive to stall in making payments until someone dies because of punitive damages and the availability of punitive damages. And I'd like you to explain how that would work. If there was delay and it was intentional to let someone die so that pain and suffering damages would not be owed, would it be possible to get punitive damages for not paying pain and suffering damages, but would you still not get the pain and suffering damages? I think so, Your Honor. I think that's what the Harrelson case decided in Arizona. A couple things. One, as the district court noted, public policy, preventing this idea that insurance companies are going to wait out plaintiffs that are near death to avoid paying these types of damages, that would be a public policy argument, which is insufficient to defeat the plain language of the survival statute. The other is, under the Harrelson case, punitive damages do survive. And so if there's a plain allegation of punitive damages, that's going to survive. You're still going to be asserting your contract in bad faith sentence. So what happens, though, if the only thing that should have been paid that wasn't paid was pain and suffering, and now pain and suffering damages aren't owed, but you're saying punitive damages might be to avoid this incentive, but then how many punitive damages can you get? Because usually it's like you can't have a multiplier more than 10, but now there are no damages. I don't even understand how this would work. Sure. Well, there would be an underlying recovery. You'd have to have a full recover from the underlying tort fees or from the liability insurer. So there would be some damages that had already occurred arising out of the personal injury, which is the crux of a UIM claim. So those damages would support a punitive damages award. But I don't understand. So say the medical expenses had been paid, but pain and suffering had not been paid, and there was litigation over pain and suffering that they dragged out so that the guy dies. So now what would the punitive damages be based on? The punitive damages could be based upon the personal injury damages that arose from the accident. Personal injury meaning pain and suffering? Well, it could be pain and suffering. It could be any of the six elements of personal injury damages under Arizona law. But let's say the underlying limits were $50,000 as they were here. Those were collected. I submit to you that that $50,000 damages could support a punitive damages claim. Even though they were paid so there was no problem with that part of it? Well, I think what Your Honor is grappling with is that there has to be some sort of underlying damages to lead to additional punitive damages. And I think the underlying punitive damages here would be the ones already paid because essentially what happens is that an insurer gets credit for the $50,000 or whatever the underlying limits are, be they $15,000, $50,000, or $100,000. And so I think that could support the punitive damages against the insurer. And also I would say that, Your Honor, that in personal injury cases it's kind of questionable whether these multipliers are as clear-cut in other types of cases. And there are plenty of bad faith cases in Arizona, especially there's recent cases arising out of property damage where there's very small damages, sometimes less than $1,000, in which significant punitive damages have been approved. So I think that you could have significant punitive damages. The other thing I want to say is that this case is a little bit unique. If Your Honor's rule that the survival statute applies to breach of contract and bad faith claims, a lot of cases arise out of collection of the minimum underlying limits, which in Arizona is $15,000. So if a plaintiff incurs even moderate medical expenses, a little bit of lost wages, some lost earning capacity, and they have an allegation of punitive damages, breach of contract and bad faith claims are going to survive, I submit to you, 9 times out of 10. This case is just unique because he recovered the $50,000 underlying liability limits and the only surviving economic damages are $41,000. Therefore, the original tort for the user is no longer an underinsured motorist. There's no UIM benefits or breach of contract damages allowed, and there's no bad faith damages because only economic damages survive. They disclose no monetary loss. There's no unpaid policy benefits anymore after application of the survival statute. Anything else, Your Honors? No, I think we have your argument. Okay. Thank you. If the court would like to hear additional argument on the merits of the appeal, or would I like to do that now? It doesn't appear we have any more questions. Okay. Okay. We appreciate your arguments. The case of Richard Kyle v. USAA Casualty Insurance Company is submitted.
judges: Clifton, Ikuta, Friedland